IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SARA ASHLEY PATTI,
     Plaintiff,

vs.                            Case No.: 3:18cv616/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 8, 9). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

On January 8, 2015, Plaintiff filed an application for DIB, and in the application she alleged disability beginning April 6, 2013 (tr. 10).[1]  Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on January 12, 2017, and on June 1, 2017, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (tr. 10–19).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.   FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (see tr. 10–19):

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on June 15, 2018 (ECF No. 11).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

(1)     Plaintiff last met the insured status requirements of the Act on June 30,

2013[2];

(2)     Plaintiff did not engage in substantial gainful activity during the relevant period;

(3)     Plaintiff had the following severe impairments: disorders of the abdominal/gastrointestinal system including malrotated bowel and delayed gastric emptying, gastroesophageal reflux disease, and degenerative disc disease of the cervical spine;

(4)     Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(5)     Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work;

(6)     Plaintiff was able to perform her past relevant work as a cashier-retail, cashier-I, assistant manager retail, and catering helper, as this work did not require the performance of work-related activities precluded by Plaintiff's RFC;

(7)     Plaintiff was not under a disability, as defined in the Act, at any time from April 6, 2013, through June 30, 2013, the relevant period.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether

the decision is supported by substantial evidence from the record and was a result of

the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218

---

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is less than three months, from April 6, 2013 (date of alleged onset), through June 30, 2013 (date last insured).

(11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence

preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of

at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

A.      Relevant Personal and Employment History

Plaintiff was thirty years of age on January 12, 2017, the date of her hearing before the ALJ (tr. 33). She testified she had completed the twelfth grade and some college (*id.*). She stated that she was living with her husband of ten years and her eight-year-old son (tr. 32–33). She noted she had a driver's license but was unable to drive long distances due to neck pain (tr. 33–34).

Plaintiff last worked in 2008 as an assistant manager at a pharmacy (tr. 35). She worked full-time for around ten hours per day, and her duties included filling medications, running the cash register, and helping customers (tr. 34–35). She stated she was "let go" from this position because she missed work due to issues with her neck and because she had been placed on bed rest for a high risk pregnancy (tr. 35–36). Prior to this employment, Plaintiff worked full-time as a food server; she also assisted with catering on nights and weekends, which required her to load prepared food into a van, drive it to catering locations, unload and set up the food, cater to guests during the event, and then clean and reload the van (tr. 36). She also previously worked as a cashier and in customer service at a grocery store and was promoted to assistant front-end manager (tr. 37–38). As manager, she was responsible for scheduling the cashiers' shifts, accounting for the cashiers' "tills," and accounting for all money in the office.

As to her depression and anxiety, Plaintiff recalled that she first sought treatment in or about 2012 or 2013,[3] after her mother was diagnosed with cancer, at which time she began taking anxiety medication and attending weekly therapy sessions (tr. 51).  She testified that she still sees a psychiatrist once every three months (*id*.).  She noted that her prescription for Zoloft had been increased four times because it had not kept her anxiety under control (tr. 52).  At the time of the hearing, Plaintiff was taking 200mg of Zoloft per day—the maximum dosage—and she indicated that if this proved to be ineffective she might have to try a different medication (*id*.).  She testified she previously had panic attacks, but no longer has them and instead has episodes which cause her to be "anxious," "nervous," and unable to concentrate or focus (*id*.).

B.     Relevant Medical History[4]

Evidence that Pre-dates the Relevant Period

Plaintiff sought emergency care for "flank pain" on February 5, 2013, at which time she also reported a history of acute anxiety (tr. 368).  The provider found her to be "mildly anxious" but alert and oriented to person, place, and time (tr. 369).

---

[3] As will be discussed more fully *infra*, the medical records show that Plaintiff first presented for mental heath counseling in November of 2013, after the relevant period.

[4] Because the issues in this appeal relate to Plaintiff's mental impairments only, the court's summary of the medical evidence will primarily focus on the same.

Plaintiff was assessed with abdominal pain, mild reflux, and mild diverticulosis (but no psychological impairment), and she was discharged (tr. 371, 373). At a follow-up appointment on February 12, 2013, with David Campbell, M.D., Plaintiff inquired about a counselor for her anxiety but indicated she did not want to take medication to treat it (tr. 359). Dr. Campbell noted Plaintiff's report of anxiety in the "Review of Systems" section of his treatment record, but he did not assess Plaintiff with an anxiety disorder or any other mental impairment (*see* tr. 360–62).

<u>Evidence from the Relevant Period (April 6, 2013, to June 30, 2013)</u>

Plaintiff's claims file contains no records from the relevant period.

<u>Evidence that Post-dates the Relevant Period</u>

On October 4, 2013, Plaintiff reported to the emergency room for abdominal pain and was noted to be "negative" for depression, anxiety, suicidal ideation, homicidal ideation, and hallucinations (tr. 380). She was also oriented as to person, place, and time, and she displayed normal behavior, affect, and mood (tr. 381).

Plaintiff first reported to Bridgeway Center, Inc., on November 5, 2013, for mental health therapy/counseling and was seen by intern Jennifer Gautney, MSHS (tr. 353). She complained of "catastrophic thinking" as well as anxiety that purportedly affected her relationships with others (*id*.). Plaintiff returned on November 27, 2013,

and Ms. Gautney noted that she was euthymic and cooperative and that she denied homicidal or suicidal ideation (tr. 351). Plaintiff returned again on December 2, 2013, and was evaluated by Kay Whitten, ARNP (tr. 423–24). Plaintiff reported anxiety since age eight but stated it had increased over the past year and a half after she found out her stepmother had been diagnosed with stage-four cancer (tr. 423). ARNP Whitten noted that Plaintiff's mood was anxious but that she was alert, oriented, and appropriately dressed, and she had satisfactory hygiene and judgment (*id*.). Plaintiff was assessed with generalized anxiety disorder, prescribed 50 mg of Zoloft daily, and advised to follow up in two months and to continue her counseling sessions (tr. 423–24).

Plaintiff presented for therapy with Intern Gautney on January 2, 2014, and reported feeling "much less anxious" since increasing her medication dosage (tr. 350). On January 24, 2014, Plaintiff reported "doing well" and working on using the techniques learned in therapy, but she did report compulsive behavior (tr. 349). On February 26, 2014, Plaintiff reported having a "tough week" but noted she was able to respond in a "normal" way (tr. 348). She also reported having compulsive behavior but expressed a desire to work on it during therapy (*id*.).

Plaintiff returned to ARNP Whitten for a follow-up appointment on April 21, 2014 (tr. 421). Plaintiff conveyed that her mother had passed away but that she was grieving "fairly well" and the Zoloft was helping "quite a bit" (*id*.). In August of 2014, Plaintiff reported some "breakthrough anxiety," and her Zoloft prescription was increased to 100mg daily (tr. 419). On November 3, 2014, Plaintiff reported that the Zoloft had a "pretty good result" and that she had "no depression or anxiety" (tr. 418). Plaintiff stated she was volunteering with the American Cancer Society and becoming involved with volunteer work in the community (*id*.). Plaintiff next followed up more than three months later, on February 6, 2015, and reported she was doing "very well," was "feeling great," was "very pleased" with the effects of her Zoloft, and was feeling like herself again (tr. 427). She reported no anxiety or depression and advised that she spent her time home-schooling her son and being with family (*id*.). On February 20, 2015, Plaintiff advised Ms. Gautney that she was "managing well" and taking Zoloft "with [a] pretty good result," but she reported symptoms of excessive anxiety and worry, difficulty controlling the worry, fatigue, restlessness, and irritability (tr. 449). She conveyed that she wanted to address her grief, improve her mood, and obtain relief from anxiety and depression (*id*.). Thereafter, Plaintiff attended four more therapy sessions (every few weeks or so) and made reports similar to those made on

February 20 (*see* tr. 451–56). On May 12, 2015, however, Plaintiff stated she wished to "take a break" from therapy to focus on her medical conditions and because she was "in a better place to manage her anxiety" (tr. 456).

Plaintiff was seen again by ARNP Whitten on August 3, 2015, for a follow-up appointment (tr. 457). Plaintiff reported "doing well" but stated she wished to increase her Zoloft dosage because she was experiencing "breakthrough anxiety" (*id.*). On November 6, 2015, Plaintiff reported that the increased Zoloft was "working great" and she felt "less depressed" and "more energetic" (tr. 461).

Plaintiff was seen four more times between February 8, 2016, and October 3, 2016 (tr. 462, 463, 464, 596). She reported good results with her dosage of Zoloft and expressed no concerns related to her depression or anxiety (*id.*). Finally, as of the date of Plaintiff's hearing before the ALJ (January 12, 2017), she was taking 200mg of Zoloft daily and seeing a provider every three months, but she was no longer attending therapy (tr. 28, 341).

C.    Other Information Within Plaintiff's Claim File

Plaintiff completed a Function Report on January 26, 2015, and indicated that she suffers from depression and social anxiety, in addition to her various physical ailments (tr. 255). She claimed that her anxiety affects her sleep, but she reported no

problems with personal care, remembering to take her medication or take care of her personal needs, handling her finances, or getting along with others (tr. 256–58, 260). She also indicated that she enjoys watching TV, reading, watching her son play, and hanging out with others (tr. 259). She claimed that she can pay attention for an hour, does "OK" with written instructions, does "pretty well" with spoken instructions, and gets along "pretty well" with authority figures, but she does not handle stress or changes in routine well (tr. 260–61). She also claimed that she is "OCD" and is "terrified" of death and dying (tr. 261). She noted that she was prescribed Zoloft, but it made her "spacey/jittery" (tr. 262).

Plaintiff also completed a Supplemental Anxiety Questionnaire on January 26, 2015 (tr. 266). She indicated that she began having anxiety attacks at the age of eight, that her last anxiety attack was on December 20, 2014, that she has attacks "almost everyday," and that she had suffered sixty attacks in the last six months (tr. 266–67). Plaintiff claimed that the attacks are caused by every day stress, are worsened by everything, are relieved by nothing, and last about twenty minutes during which she gets dizzy, cries uncontrollably, screams, fights with family, and experiences

increased heart rate and blood pressure (tr. 267). She claimed that when she has an attack, she can only "sit in a dark room and ride it out" (tr. 268).[5]

On February 18, 2015, a non-examining agency psychologist, George Grubbs, Psy.D., assessed Plaintiff's mental limitations (tr. 152). He opined that Plaintiff's anxiety-related disorder caused no functional limitations (in activities of daily living; in maintaining social functioning; and in maintaining concentration, persistence or pace) or repeated episodes of decompensation, and that the impairment was non-severe (*id.*). On April 29, 2015, Pauline Hightower, Psy.D, another agency consultant, assessed Plaintiff's mental limitations and made findings that are identical to those of Dr. Grubbs (tr. 172).

Vocational Expert ("VE") Gayle Gerald testified at Plaintiff's hearing (tr. 54–59). She classified Plaintiff's past work as an assistant manager as light, unskilled work; as a head cashier as sedentary, skilled work; and as a cashier-retail, waitress,

---

[5] Plaintiff's husband, Scott Patti, also completed the same two forms in late January 2015 (tr. 280, 291). Mr. Patti reported that Plaintiff had rather severe deficits with concentration, paying attention, handling stress, and medication side effects (*see* tr. 285–87). He also reported that Plaintiff had frequent and long-lasting panic attacks, which (in pertinent part) rendered her unable to function (*see* tr. 291–93). The ALJ discounted these reports as inconsistent with Plaintiff's own statements and the medical evidence of record (*see* tr. 17), such as the treatment records and notes from Bridgeway that recorded Plaintiff's progress and her own statements regarding the efficacy of her medications. Plaintiff raises no issue in this appeal regarding Mr. Patti's statements (or her own, for that matter), so they are not discussed further herein. Nevertheless, the court notes that the ALJ's reasons for discounting the more extreme statements are well supported by the record.

catering helper, and customer service clerk as light, semi-skilled work (tr. 56–57). Because all of Plaintiff's past jobs were performed at the light (or sedentary) level of exertion, and Plaintiff's RFC is for the full range of light work, Plaintiff could perform her past relevant work and thus was not disabled during the relevant period (*see* tr. 18).

## V.    DISCUSSION

Plaintiff asserts one ground for relief, namely, that the ALJ erred at step two of the sequential evaluation in failing to find her anxiety disorder to be a severe impairment (*see* ECF No. 16 at 2, 4).[6]

At step two of the sequential evaluation process, a claimant must prove that she is suffering from a severe impairment or combination of impairments, that have lasted (or must be expected to last) for a continuous period of at least twelve months, and which significantly limit her physical or mental ability to perform "basic work activities." *See* 20 C.F.R. §§ 404.1509, 404.1520(c) 404.1521(a).   Basic work activities include mental functions such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to

---

[6] Plaintiff also contends that the ALJ's "opinion is not based on substantial evidence" (*see* ECF No. 16 at 2, 4), but all of her arguments relate to the ALJ's findings at step two (with respect to her anxiety).  The court therefore construes the two claims as raising the same issue and will discuss them as such.

Case No.: 3:18cv616/EMT

supervisors, co-workers, and usual work situations; and dealing with changes in a routine work setting, as well as physical functions not at issue here. 20 C.F.R. § 404.1521(b). An impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); *see also* Bowen v. Yuckert, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account"). Although the claimant carries the burden at step two, the burden is mild. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that "her impairment is not so slight and its effect is not so minimal." *Id.*

In evaluating the severity of mental impairments, an ALJ must follow a "special technique," which requires that the ALJ first evaluate a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a

medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a. If so, the ALJ must then rate the degree of functional limitation resulting from the impairment(s) in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. § 404.1520a(c)(3). The ALJ must rate the degree of limitation in each of these areas on a five-point scale, using the following terms: none, mild, moderate, marked, or extreme. If a claimant has no more than mild functional limitations, the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe . . . ." *Id*. § 404.1520a(d)(1). Here, the ALJ found that Plaintiff's generalized anxiety disorder was a medically determinable mental impairment (tr. 13). Applying the special technique, the ALJ next found that Plaintiff had no limitations in interacting with others and, "at most," mild limitations in the other three functional areas and thus no severe mental impairment (tr. 14).

In support of her findings, the ALJ pointed to Plaintiff's lack of treatment for, or complaints of, mental impairments prior to June 30, 2013, the date she was last insured. This factor is well supported by the record, as the undersigned has found no mental diagnosis prior to the date last insured or any mental health treatment records from that time frame (and Plaintiff has pointed the court to none). Instead, the record reveals only occasional complaints of anxiety made by Plaintiff when she presented

for treatment for physical problems in February of 2013, as the ALJ noted (tr. 13).[7]

Because these complaints were made before Plaintiff's alleged onset date of April 6,

2013, they are not necessarily probative of Plaintiff's condition during the relevant

time frame. More important, even if the complaints had been made during the

relevant period, they clearly fall far short of establishing the existence of severe

impairment. *See, e.g.*, Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per

curiam) (a claimant bears the burden of proving her disability, so she is responsible

for producing evidence to support her claim); Hutchinson v. Astrue, 408 F. App'x

324, 327 (11th Cir. 2011) (no error in finding mental impairment non-severe where:

(1) "[t]he bulk of the evidence [the claimant] presented about her depression and

anxiety was subjective"; (2) "[t]he scant objective evidence, even if viewed in [the

claimant's] favor, merely established at most that the depression and anxiety existed";

and (3) the claimant "had no objective history of treatment for mental impairments

and never sought counseling or hospitalization for her depression or anxiety");

Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective

medical evidence, it is proper for ALJ to consider use of painkillers, *failure to seek*

---

[7] Specifically, the ALJ cited a February 2013 emergency department record where Plaintiff presented for flank pain and was noted to be alert and oriented to person, place, and time (tr. 368), and a follow-up treatment record from one week later where Plaintiff inquired about counseling but declined medication, and where the physician's notes listed no change in sleep pattern, no depression, no concentration difficulties, and a normal status examination (tr. 13, 359–60).

*treatment*, daily activities, conflicting statements, and demeanor at the hearing); Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992) (absence of treatment indicates that a mental impairment is non-severe).  Thus, because Plaintiff has "not objectively show[n] when or how [her anxiety] affected her ability to perform basic work skills," she has failed to meet her burden at step two.  Hutchinson, 408 F. App'x at 327; *see also* McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a . . . disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

Plaintiff attempts to support her argument by pointing to treatment records from Bridgeway (*see* ECF No. 16 at 3, 6), but the court is unpersuaded.  Plaintiff first presented to Bridgeway in November of 2013, more than four months *after* her date last insured (*see* tr. 353).  As such, all of the Bridgeway records are marginally relevant, at best.  Even so, the ALJ did not overlook these records in making her findings at step two.  For example, the ALJ noted that during Plaintiff's weekly therapy sessions at Bridgeway she reported good results with medication, and her mood was consistently noted to be euthymic and cooperative (tr. 13, *citing* tr. 417–18).  *See* Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an

impairment can be controlled by treatment or medication, it cannot be considered disabling.") (citations and quotation omitted); *see also* <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted). Moreover, the Bridgeway records show that Plaintiff's treatment was conservative in nature, consisting of therapy sessions and medication management only. *See* <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ may consider that treatment is "entirely conservative in nature" in discrediting a claimant's testimony); <u>Miller v. Astrue</u>, Case No. 8:07cv2074, 2009 WL 3516, at *5 (M.D. Fla. January 6, 2009) (same); <u>Woodum v. Astrue</u>, Case No. 8:07cv404, 2008 WL 759310, at *3 (M.D. Fla. Mar. 20, 2008) (ALJ properly considered that "limited and conservative treatment . . . is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant").

In particular, Plaintiff appears to rely upon an entry in the Bridgeway records which states, "Sara is seen for medication management and monitoring of symptoms that include Anxiety as evidenced by excessive anxiety and worry about a number of events, difficulty controlling the worry, restlessness, fatigue, and irritability that causes significant distress" (ECF No. 16 at 6). But Plaintiff's reliance on this entry

is misplaced.[8]  First, assuming Plaintiff is referring to a Progress Note dated February 20, 2015, which contains the quoted entry, *supra*, this note reflects Plaintiff's condition *nearly two years beyond* her date last insured.  Second, the remainder of the same Progress Note indicates that Plaintiff was "managing well" and continuing to take her Zoloft with a "pretty good result," and it notes no symptoms of depression or anxiety (or panic attacks, at all, much less panic attacks occurring at the rate and severity alleged by Plaintiff and her husband) (tr. 449).  The Note also includes Plaintiff's report that she had been volunteering with the American Cancer Society and "becoming involved in" other community-based volunteer work (tr. 449).  Further, it describes Plaintiff as alert, oriented, smiling, cheerful, pleasant, and cooperative, with a euthymic mood, bright affect, and satisfactory attention, focus, and concentration (tr. 449).  Thus, when read in context, the 2015 entry actually supports the ALJ's overall findings.

Continuing, in finding no severe mental impairment at step two, the ALJ considered that Plaintiff never reported any difficulty with self-care and, by her own account, she was able to prepare some meals, assist with household chores, travel independently, and care for her son (tr. 13, 355–60).  The ALJ also pointed to

---

[8] Plaintiff failed to provide a citation to the transcript indicating where this entry appears in the record; as such, per the terms of this court's Scheduling Order, her contention based on this entry need not be considered (*see* ECF No. 12).  Nevertheless, the court will address it as best it can.

Plaintiff's report that she had no difficulty with memory, completing tasks, understanding, or following instruction (*id.*).   Additionally, the ALJ noted that Plaintiff had never been fired or laid off from a job due to an inability to get along with other people, and in fact, had a history of skilled managerial-type positions (tr. 13, 331).   Last, the ALJ referenced the opinions of the two non-examining state agency consultants who, after reviewing Plaintiff's medical history, found no severe mental impairment (tr. 14).[9]

## VI.   CONCLUSION

For the foregoing reasons, the court concludes that the ALJ committed no error at step two in finding that Plaintiff had no severe mental impairment.   Moreover, the Commissioner's ultimate decision is supported by substantial evidence and should not be disturbed.   42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560.

---

[9] Plaintiff states, "Any weight given to [the] State agency psychological consultants is not based on substantial evidence and erroneous." (ECF No. 16 at 6).  But Plaintiff does not develop this argument or explain how the ALJ erred (*see id.* at 6–7).  After careful review, the court finds no error.  An ALJ is *required* to consider the opinions of non-examining consultants because they "are highly qualified physicians . . . who are also experts in Social Security disability evaluation."  *See* 20 C.F.R. § 404.1527(e).  Moreover, an ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources.  Edwards v. Sullivan, 937 F.2d 580, 584–85 (11th Cir. 1991).  Here, the ALJ considered and then assigned partial weight to the opinions of the state agency consultants, but the ALJ did so in a manner that *favored* Plaintiff (the consultants found no mental limitations whatsoever, but the ALJ found mild limitations in three areas).  Put simply, the ALJ committed no error in partially relying upon the opinions of agency experts.

Finally, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is hereby **ORDERED** that:

1.    The decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED**.

2.    **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.    The Clerk is directed to close the file.

At Pensacola, Florida this 14th day of June 2019.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**